1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

GLAZING HEALTH AND WELFARE
FUND, *et al.*,

        Plaintiffs,

v.

ACCURACY GLASS & MIRROR
COMPANY, INC., *et al.*,

        Defendants.

Case No. 2:13-CV-01106-KJD-NJK

**ORDER**

Before the Court is Defendants Accuracy Glass & Mirror Co. ("Accuracy"), Michael A.
Lamek ("Lamek"), and Kelly D. Marshall's ("Marshall") (collectively "Defendants") Motion to
Dismiss (#9). Also before the Court is Defendants' Motion to Dismiss First Amended Complaint
(#17). Plaintiffs Glazing Health and Welfare Fund, et al. ("Plaintiffs") filed a response in opposition
(#20), to which Defendants replied (#22). Also before the Court is Defendants' Motion to Dismiss
Western National Mutual Insurance Co. ("Western National") (#63). Plaintiffs filed a response in
opposition (#89). Also before the Court is Plaintiffs' Motion for Default against Aegis Security

1   Insurance Company ("Aegis") (#72) and Plaintiffs' Motion for Leave to File Second Amended

2   Complaint (#73).

3   I. Background

4          Accuracy is a Nevada glass and glazing contractor (#13). Lamek is Accuracy's

5   secretary/treasurer and Marshall is its president (#13). Plaintiffs are a collection of trusts that manage

6   participating employees' benefits in southern Nevada (#13). Accuracy entered into a Master Labor

7   Agreement ("MLA") and several Trust Agreements with Glaziers Union Local 2001 (#17).  Plaintiffs

8   allege that Accuracy failed to meet the contribution obligations required by the MLA and Trust

9   Agreements (#13).

10   II. Legal Standard for a Motion to Dismiss

11          In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as

12   true and construed in a light most favorable to the non-moving party." Wyler Summit Partnership v.

13   Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).

14   Consequently, there is a strong presumption against dismissing an action for failure to state a claim.

15   See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).

16          To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

17   true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

18   (2009). Plausibility, in the context of a motion to dismiss, means that a plaintiff has pleaded facts

19   which allow the court to draw the reasonable inference that the defendant is liable for the misconduct

20   alleged. Id.

21          The Iqbal evaluation illustrates a two prong analysis. First, the Court identifies the allegations

22   which are legal conclusions, bare assertions, or merely conclusory. Id. at 1949-51. Second, the Court

23   determines if the remaining factual allegations plausibly suggest an entitlement to relief. Id. at 1951. If

24   the allegations state plausible claims for relief, the claims survive the motion to dismiss. Id. at 1950.

25   ///

26   ///

2

III. Analysis

    A. Defendants' Motion to Dismiss First Amended Complaint

        Defendants move to dismiss Plaintiffs' injunctive relief claim, Plaintiffs' Breach of Contract claim against Marshall and Lamek, and Plaintiffs' Breach of Fiduciary Duty claim. Plaintiffs assert that Marshall and Lamek are both individually liable for breach of contract and breach of fiduciary duty. Plaintiffs also argue that their injunctive relief claim was designed to put Defendants on notice that Plaintiffs seek injunctive relief in the current case, as required by FED. R. CIV. P. 65(a)(1).

        1. Injunctive Relief

        Defendants move to dismiss Plaintiffs' cause of action for injunctive relief. Defendants argue that injunctive relief is a remedy, not a cause of action. Defendants also argue that Plaintiffs are only entitled to injunctive relief if they prevail on their claims for breach of contract and breach of fiduciary duty.

        Plaintiffs do not contend that their cause of action for injunctive relief is, in fact, a cause of action. Instead, Plaintiffs assert that they are entitled to injunctive relief under ERISA. Plaintiffs also argue that the cause of action for injunctive relief fulfills the notice requirement of FED. R. CIV. P. 65(a)(1).

        An injunction is not a cause of action. First 100, LLC v. Wells Fargo Bank, N.A., 2:13-CV-431-JCM-PAL, 2013 WL 3678111 (D. Nev. 2013). It is a form of relief, and is an exercise of a court's equitable authority. See Salazar v. Buono, 559 U.S. 700, 714-15 (2010). Plaintiffs' cause of action for injunctive relief (1) refers to Plaintiffs' breach of contract claim and (2) asserts that Plaintiffs are entitled to injunctive relief. It does not contain a distinct substantive claim that warrants a new cause of action. Consequently, the Court grants the motion to dismiss Plaintiffs' cause of action for injunctive relief, but recognizes that injunctive relief is a remedy available to Plaintiffs.

        2. Breach of Contract

        Defendants argue that Plaintiffs fail to plead facts alleging that Lamek or Marshall entered into a contract with Plaintiffs. Defendants assert that Plaintiffs plead that only Accuracy

1    entered into a MLA and breached the agreement, which does not state a claim for relief against

2    Lamek and Marshall unless they are alter-egos of Accuracy. Defendants also contend that Plaintiffs'

3    FAC makes conclusory statements and does not allege supporting facts that Lamek and Marshall are

4    Accuracy's alter-egos.

5           Plaintiffs argue that they should be allowed to pursue their claims against Lamek and

6    Marshall as alter-egos of Accuracy because Defendants have not respected the corporate form.

7    Specifically, Plaintiffs assert that Defendants used the corporate form to pay off Accuracy's other

8    creditors while ignoring Accuracy's obligations under the MLA. Plaintiffs also assert that Lamek and

9    Marshall purposefully used the corporate form to their own benefit and to the detriment of others

10   when they continued to pay contributions or health care insurance premiums for themselves, but

11   ceased payment of the same for their employees.

12          Plaintiffs additionally argue that the corporate structure should be disregarded to

13   prevent injustice. Plaintiffs assert that, while Accuracy has represented that it will not file bankruptcy,

14   it has severe cash flow problems. Plaintiffs contend that Accuracy's delinquency is substantial and that

15   it will be impossible to recover Plaintiffs' claims from Accuracy.

16          a. Personal Liability under ERISA

17          An employer may not avoid ERISA liability merely by showing that it has not signed

18   the applicable governing agreement. See Trustees of Screen Actors Guild-Producers Pension and

19   Health Plans v. NYCA, Inc., 572 F.3d 771, 776 (9th Cir. 2009). Shareholders and officers of a

20   corporation may be liable for the company's contribution obligations in situations in which justice

21   requires piercing the corporate veil. Id. In its analysis, a court, in essence, determines if the non-

22   signatory party and the signatory party are, in reality, one and the same. See Id. If they are, then it is

23   fair to say that a purported non-signatory party is actually a signatory party. See Id. at 776-77.

24          An officer of a corporation will be personally liable for trust fund contributions if (1)

25   there is little or no respect shown to the separate identity of the corporation; (2) recognition of the

26   corporation as a separate entity would result in injustice to the litigants; and (3) there was a fraudulent

4

1  intent behind the incorporation of the company. See Seymour v. Hull & Moreland Eng'g, 605 F.2d

2  1105, 1111 (9th Cir. 1979). To succeed in its claim, a party must prevail on the first threshold factor

3  and on at least one of the other two. UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1475

4  (9th Cir. 1994).

5          Plaintiffs' allegation that Lamek and Marshall are Accuracy's alter-egos (#13, ¶ 114) is

6  a conclusory statement and does not factor into the Court's analysis. See Iqbal, 129 S. Ct. 1949-51.

7  Additionally, Plaintiffs' other alleged facts in the FAC fail to meet any of the factors set out by

8  Seymour.

9          First, Plaintiffs do not plausibly allege that Lamek and Marshall did not respect the

10  corporate form. Instead, Plaintiffs allege that Lamek and Marshall are Accuracy's primary officers

11  (#13, ¶ 7) and that their duties included remitting the reports, contributions, and payments required by

12  the MLA (#13, ¶ 113). To satisfy the Seymour first factor, Plaintiffs must allege facts showing that

13  Defendants disrespected Accuracy's corporate individuality, such as failing to keep separate corporate

14  records, comingling personal and corporate funds, or treating corporate assets like personal assets.

15  See Seymour, 605 F.2d at 1112. Lamek and Marshall's performance (or nonperformance) of their

16  duties as Accuracy's primary officers does not, by itself, show that Lamek and Marshall did not

17  respect Accuracy's separate identity as a corporation. Therefore, Plaintiffs fail to satisfy the first

18  Seymour factor.

19          Second, Plaintiffs do not plausibly allege that recognizing the corporate form will

20  result in a substantial injustice. Plaintiffs state that, if the Court recognizes the corporate form,

21  Accuracy's severe cash flow problems will prevent Plaintiffs from recovering their claims. However, a

22  plaintiff's inability to collect does not, by itself, constitute an inequitable result. See Seymour, 605

23  F.2d at 1113. Courts have found an inequitable result when a corporation is so undercapitalized that it

24  is unable to meet debts that may reasonably be expected to arise in the normal course of business.

25  Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Serv., Inc., 736 F.2d 516, 525

26  (9th Cir. 1984). Plaintiffs' opposition does not suggest that Accuracy was undercapitalized to this

degree. In fact, Plaintiffs suggest that Accuracy was able to meet at least some of its other financial obligations, even if it was to Plaintiffs' detriment (#20, p. 12). Plaintiffs fail to meet the second Seymour factor.

Third, Plaintiffs do not plausibly allege that Lamek and Marshall had fraudulent intent behind incorporating Accuracy. Plaintiffs assert that Lamek and Marshall used the corporate form to pay off Accuracy's other creditors while neglecting its obligations to Plaintiffs (#20). Plaintiffs also suggest that Lamek and Marshall were engaged in dishonest behavior because they caused Accuracy to cover their own health contributions while leaving their employees' contributions unpaid (#13, ¶ 106). To meet Seymour's third factor, Plaintiffs must allege that Defendants had fraudulent intent in forming Accuracy; they cannot rely solely on Defendants' bad faith in disregarding their obligations to Plaintiffs. See Seymour, 605 F.2d at 1113 (9th Cir. 1979). While Defendants' actions may appear unfair, it does not show fraudulent intent behind Accuracy's incorporation. Plaintiffs thus fail to plausibly allege any of the Seymour factors in the FAC.

### b. Plaintiffs' Alternative Theory for Personal Liability.

Plaintiffs argue that, when a statute provides for individual civil or criminal liability, the Court may bypass the Seymour analysis because piercing the corporate veil is justified as a matter of public policy. Specifically, Plaintiffs contend that: (1) Accuracy knowingly and willingly failed to make the payments required by the MLA; (2) failure to make these payments is a misdemeanor under N.R.S. 613.125; and (3) N.R.S. 613.125 allows the Court to bypass the Seymour analysis.

Plaintiffs' argument is flawed for several reasons. First, N.R.S. 613.125 does not govern the question before the Court; ERISA does. See Uriarte, 736 F.2d at 523 (stating that, although a court may look to a state law for guidance when considering whether to pierce the corporate veil, courts apply federal substantive law in its determination). Second, the Ninth Circuit has expressly held that, if a party wishes to pierce the corporate veil in an ERISA case, it must prevail on the first Seymour factor and on at least one of its other two factors. See Nor-Cal Plumbing, Inc., 48 F.3d at 1475. Third, even if N.R.S. 613.125 governed the current case, Plaintiffs have not

1   provided supporting case law or statutes that show how it allows the Court to bypass the <u>Seymour</u>

2   analysis. Plaintiffs' alternative theory, therefore, does not have merit. Plaintiffs thus fail to allege

3   plausibly that Lamek and Marshall are personally liable for the breach of the MLA.

4                   <u>3. Breach of Fiduciary Duty</u>

5           Defendants argue that Plaintiffs' Breach of Fiduciary Duty claim against Lamek and

6   Marshall should be dismissed because Plaintiffs' FAC contains mere conclusory statements.

7   Defendants argue that, although Lamek and Marshall were fiduciaries to Accuracy, they are not

8   fiduciary to Plaintiffs unless they are in charge of administering the assets that are maintained in a

9   qualified ERISA employee benefit plan. They argue that Plaintiffs have not alleged that Lamek and

10  Marshall had authority to engage any plan assets.

11          Plaintiffs argue that Lamek and Marshall were the primary decision makers regarding

12  payment of contributions to the Trusts and therefore exercised authority and control relating to the

13  disposition of the Trusts' assets. Plaintiffs assert that at least one of the Trust Agreements specified

14  that unpaid contributions became plan assets on the day they were due. Plaintiffs argue that, by failing

15  to remit the contributions to the Trusts as required by the MLA and Trusts Agreements, the individual

16  Defendants breached their fiduciary duty under ERISA.

17          A person can become a fiduciary under ERISA to the extent that he exercises

18  discretionary control of a plan or its assets, gives investment advice respecting the plan assets, or has

19  discretionary authority in a plan's administration. 29 U.S.C. § 1002(21)(A). ERISA defines

20  "fiduciary" not in terms of a formal trusteeship, but in functional terms of control and authority over

21  the plan. <u>Mertens v. Hewitt Associates</u>, 508 U.S. 248, 262 (1993). Typically, employer contributions

22  do not become plan assets until the employer pays the contributions to the plan. <u>Cline v. Indus. Maint.</u>

23  <u>Engr. & Contracting Co.</u>, 200 F.3d 1223, 1234 (9th Cir. 2000).

24          Many courts in the Ninth Circuit recognize that <u>Cline</u> does not apply when the

25  agreement governing the plan clearly identifies unpaid employer contributions as plan assets. See <u>e.g.</u>

26  <u>Trustees of the Const. Indus. and Laborers Health and Welfare Trust v. Vasquez</u>, 2:09-CV-02231-

                                                    7

1   LRH, 2011 WL 4549228 (D. Nev. 2011). Although the Ninth Circuit Court of Appeals has not

2   specifically ruled on the issue, it has recognized that:

3   > There is some district court and bankruptcy court authority supporting the proposition
    > that an employer is a fiduciary under the Bankruptcy Code with respect to unpaid
4   > contributions, where the collective bargaining agreement includes unpaid contributions
    > as plan assets. According to these cases, it is ERISA and the provision of the particular
5   > collective bargaining agreement, and not the contractor's nonpayment of the debt, that
    > are responsible for a fiduciary relationship. If the agreement creates the obligation to
6   > pay contributions and defines plan assets to include the unpaid contributions, then
    > ERISA makes the person who controls those plan assets a fiduciary.
7
    Carpenters Pension Trust Fund for N. California v. Moxley, 734 F.3d 864, 869 (9th Cir. 2013). The
8
    Ninth Circuit ultimately declined to decide whether unpaid contributions were plan assets because the
9
    case before it did not address the issue of unpaid contributions arising from contractual obligations.
10
    Id. The Ninth Circuit, however, stated that the Appellant made a persuasive case in light of the
11
    provisions of its agreement. Id.
12
            In light of the Ninth Circuit's reasoning, the Court agrees with the decision of its sister
13
    courts: the general rule laid out by Cline does not apply when the agreement governing a plan clearly
14
    identifies unpaid employer contributions as plan assets.
15
            Plaintiffs do not benefit from the Cline exception. Although Plaintiffs' opposition to
16
    Defendants' motion (#20) includes an excerpt of a single Trust Agreement that identifies unpaid
17
    contributions as plan assets, Plaintiffs did not include the excerpt in their FAC. Additionally, Plaintiffs
18
    have not alleged or provided supporting facts that the unpaid employer contributions were plan assets
19
    under the remaining Trust Agreements. Thus, Plaintiffs fail to allege adequately that Lamek and
20
    Marshall breached a fiduciary duty.
21
            The Court grants Plaintiffs leave to submit a third amended complaint to address the
22
    deficiencies in their claims. The Court orders Plaintiffs to submit the third amended complaint within
23
    ten (10) days of the entry of this order. If Plaintiff does not timely file a third amended complaint, or
24
    the third amended complaint does not adequately address the deficiencies addressed by the Court,
25
    Plaintiffs' Breach of Contract claim and Breach of Fiduciary claim will be dismissed with prejudice.
26

1          <u>B. Defendants' Motion to Dismiss Western National Mutual Insurance Co.</u>

2         Defendants also move to dismiss Western National. Western National is party to this case

3 because it issued a bond to Accuracy and Plaintiffs seek to recover the bond's $15,000 aggregate limit

4 under N.R.S. § 624.273 (#13).

5         Defendants filed a proposed order with their Motion to Dismiss. Defendants propose that (1)

6 Defendants deposit $15,000 into the Registry of the Court, (2) the deposit stand in place of Western

7 National's bond with respect to Plaintiffs' claims against Western National, (3) the deposit remain

8 with the Registry pending the Court's order, and (4) Western National be dismissed from the case

9 with prejudice. In essence, Defendants seek to have their $15,000 take the place of Western

10 National's $15,000 bond.

11         Defendants argue that, since Plaintiffs cannot recover more than $15,000 from Western

12 National, they are not prejudiced by the proposed order. Additionally, Defendants argue that if

13 Plaintiffs bring suit against Western National, Defendants will be forced to pay Western National's

14 legal fees and costs, which will quickly eclipse the $15,000 bond's value. Defendants also assert that

15 Plaintiffs agree to Defendants' Motion.

16         However, Plaintiffs opposed Defendants' Motion. Plaintiffs argue that the Defendants' Motion

17 will prejudice Plaintiffs because it will reduce their potential recovery. Plaintiffs also argue that

18 Western National's dismissal would be a decision on the merits of Plaintiffs' cause of action. Plaintiffs

19 finally argue that Western National's dismissal would allow Defendants to continue their contracted

20 work, which thwarts the purposes of Nevada licensing statutes.

21         Defendants have not shown how Plaintiffs would not be prejudiced by the proposed order.

22 Further, Plaintiffs did not agree to Defendants' motion, as Defendants asserted. Finally, Defendants

23 did not file a response to Plaintiffs' opposition. Therefore, the Court denies Defendants' motion to

24 dismiss Western National.

25 ///

26 ///

1

    C. Plaintiffs' Motion for Default against Aegis

2      A clerk must enter a party's default when the party against whom a judgment is sought fails to

3 defend. FED. R. CIV. P. 55(a). Plaintiffs assert that Aegis did not file a timely answer to Plaintiffs'

4 FAC. Plaintiffs are correct. However, Aegis immediately filed an answer the same day as Plaintiffs'

5 Motion for Default. Since default had not yet been entered against Aegis, the Court denies Plaintiffs'

6 Motion without prejudice.

7      D. Plaintiffs' Motion for Leave to File Second Amended Complaint

8      Plaintiffs request leave to file a second amended complaint in order to assert claims against

9 Accuracy's originating contractors, the contractors' sureties, and the contractors' indemnitors.

10 Plaintiffs' Proposed Second Amended Complaint (#73, Attachment 1) modifies the parties presented

11 in Plaintiffs' FAC (#13) and does not add any new causes of action. Defendants have not objected to

12 Plaintiffs' motion. Consequently, the Court grants Plaintiffs' Motion, subject to the filing of a third

13 amended complaint as ordered herein.

14 IV. Conclusion

15      Accordingly, it is **HEREBY ORDERED** that Defendants' Motion to Dismiss First Amended

16 Complaint (#17) is **GRANTED**;

17      **IT IS FURTHER ORDERED** that Plaintiffs file with the Court a third amended complaint

18 addressing their claims' deficiencies within ten (10) days of the entry of this order;

19      **IT IS FURTHER ORDERED** Defendants' Motion to Dismiss (#9) is **DENIED** as moot;

20      **IT IS FURTHER ORDERED** Defendants' Motion to Dismiss Western National Mutual

21 Insurance Co. (#63) is **DENIED**;

22      **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Default against Aegis Security

23 Insurance Co. (#72) is **DENIED**;

24 ///

25 ///

26 ///

1    **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Second Amended

2  Complaint (#73) is **GRANTED**.

3    DATED this 19th day of June 2014.

4

5

6

_____

7  Kent J. Dawson
   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26